Good morning and may it please the Court. My name is Richard Grimes and I represent Michael Glenn Brown. I would like to focus my comments on what I think are the pivotal issue in this case, irrespective of choice of law issues. This case was dismissed on its pleadings primarily or ostensibly on a judicial privilege found by the trial court. It is the appellant's position that the Court erred in applying an absolute judicial privilege to the drug testing, the analysis done by Quest Laboratories, and its reporting of those that have been applied. Does that require proof of malice? It would, Your Honor. Where's the beef? Where's the malice? The malice, Your Honor, at least in terms of the pleading, is that Dr. Brown was tested and the positive test was reported on November 4, 2005. Immediately thereafter, Dr. Brown obtained 13 hair tests at different intervals that all overlapped that positive. An inch and a half of hair typically gives a 90-day retrospective view of a person's drug intake or lack thereof. Each of the 13 tests that overlapped the positive were all negative. Some of those subsequent negative tests, in fact, went to Quest. The malice comes in what I call Quest's circling of the wagon and refusal to apply their own accepted scientific standards, their own research in terms of the accuracy of these tests, and threw Dr. Brown under the bus for their own reputation and continued profits because there was no way to scientifically reconcile the negatives with the positives. In fact, the laboratory then began an endeavor without evidence and with pure speculation to accuse Dr. Brown of somehow washing cocaine from his hair. That was never substantiated and there was no evidence of that. He had tested positive for cocaine before any of this started, correct? There was a positive test in 2002. Sounds like the answer is yes. Yes. And as a result of that, in part or whole, he produced a positive result. That is correct. From lab one, is that right? Initially from lab one. And there was a follow-up test on the same sample? Yes, sir. Done by a second lab? Done by Quest. Chosen by your client? Yes. And it said the first test was correct? Correct. Where's the malice? You still can't... That sample could have very well been contaminated in some form or fashion. When the length of hair, about an inch and a half, comes in, it is cut into segments. If there's any contamination in that process, that entire sample could be contaminated. And the positive drug test that came back was just minimally over the cutoff. When the tests were retested, the cutoff was even lower. There was even a lower threshold and Dr. Brown came back with those subsequent hair tests just taken days after the positive came back negative. Scientifically, you can't reconcile that. He either had cocaine in his hair or he didn't. And this very weakly positive test, despite having retested the sample, if it's bad input, you're going to get bad output. Are you saying that it was malice to report the test? That that was done maliciously? No, Your Honor. I think when you look at the course of the initial test, that that was malice. But when you look at the course of conduct, when you look at Quest, who Dr. Brown was paying, Dr. Brown paid for these tests, when they looked at... We've got now our own laboratory doing subsequent tests that overlap this positive that we reported, and it's negative, and another test is our own scientific data that says these tests are accurate, they're essentially infallible, and they cannot be tampered with by way of washing your hair or doing something to alter the test. At what point do they say, our laboratory may have made a mistake? And I would point this out. With the initial test at Northwest, that test had to be When it was on its automated processes, it was not reading this hair sample. There was some contaminant in it, and it had to be hand calibrated. Was all of what you've just described before the Texas Medical Board? A lot of that testimony came out in front of the Texas Medical Board, and also in the criminal proceeding in Montgomery County. Your client's contention that the initial test was a mistake application, and that there were subsequent tests which came up negative. That was before the board? Yes, Your Honor. And the follow-up test by the second lab, chosen by your client, which confirmed the first test, and your contention is that that was inaccurate? Yes, Your Honor. Sort of hard to see where the malice is. I think you have to look at the course of conduct, Your Honor. I think, and also, you have to look at, assuming, we contend that 160.010 of the Texas Medical Practice Act provides for a qualified immunity, and says that a person who in good faith reports or furnishes information to a medical peer review committee or the board is have to be provided in good faith. Do you have any allegation of the motivation to report something that they should have known was false? It seems to me, well, without having the opportunity to conduct discovery, I don't have that evidence, but the allegation, and it has to be the law, that a qualified privilege applies, because if not, when you have a laboratory like... I'm going back at a little different angle on the motivation. This is a lab that was paid to do tests. They did the tests. They reported the results. Your position is that one of the results should, they should have, they either should not have reported it or they should have explained this result is probably false. Is there any, but you say that that was malicious, done in bad faith. Is there any, is there any allegation there of any reason that they would want to maliciously report a result that they knew was false? Yes, Your Honor, that's a good question. I think the reason, at least at first blush, would have to be that their reputation as a laboratory who provides accurate testing, who doesn't make mistakes, would not make a mistake, and that if they admitted that they made a mistake that resulted in a surgeon's medical license being taken away, that that would cause great damage to their reputation, and that they were incentivized to, as I say, circle the wagons and not consider their own science, because this is not, this is not like a psychologist. Before you run out of time, you have a word on publication for your libel and slander claim. In order to, what was, what was the publication? Well, the publication was to the medical board, to, the publication then went to the Houston Chronicle. There were articles in the Chronicle about Dr. Brown having been tested positive. The first publication, I believe, would have been to the medical board. Well, that is privilege, isn't it? Qualified privilege. Well, how did the Houston Chronicle get the message? I don't know the answer to that, Your Honor. You didn't charge the board, you didn't claim that the board or that the lab furnished this, leaked this information to the press? No, Your Honor. Okay. Thank you. You have just your time. May it please the Court. I'm Faye Caldwell with Caldwell Clinton from Houston, Texas, representing Quest Diagnostics, Inc. and Lab I, Inc. in this action. We firmly believe that Texas law applies under the restatement as applied by Nevada. All of the substantive contact was, and the injury, alleged injury, occurred in Texas. There's certainly no rationale for applying Nevada law versus Utah law. And it's really in our brief, and if you have no question, I'll sort of move on. Two issues. The key issue here is whether there is an absolute privilege for information and testimony at the Texas Medical Board or whether it's qualified immunity. The Texas — the statute comes into effect as a result of the healthcare quality improvement act. In all states implemented, it's basically the same. Texas has chosen, and all of the case law demonstrates, that this qualified sort of immunity issue comes about for peer-reviewed committees. Because this law not only applies to the Texas Medical Board proceedings, but to private entity peer-reviewed. And we think that's really the distinction that's missed here. We think absolute privilege applies to the conduct at the Texas Medical Board and in the criminal trial that was held in Texas on the criminal probation revocation hearing. We think this case is the Atiyah case that we cite in our brief that confronts this issue head-on. Do you get to apply a qualified immunity, or do you have absolute privilege? And it comes down as a policy reason that, frankly, that this is an absolute privilege. Are there remedies? Of course. Someone lies, you get perjury charges. They have that ability. But we really think that that's where it goes. Even assuming for the moment, which we don't, that a qualified immunity, there simply is no malice. Malice in Texas is judged at the time the statements are uttered, not subsequent information. And the only evidence of malice in this case that pointed to is subsequent events, that he subsequently tested negative. Is Lab I the only testing facility that the Texas Board uses? I don't believe so, Your Honor. I believe that this they were a primary where that was directed to for the first test that would be done, yes. I mean, that's how they the people who are marked. How was Lab I chosen? My best understanding is the Texas Medical Board decides who they wish to use. They want to use certified labs that have high standards or are certified by the Federal Government. And that was at least one of the labs chosen. I do not know if they use other labs or not. And did the Board have before it the results of the two labs? Yes. And the contention of then-Dr. Brown that they were inaccurate? It wasn't fine. As I understand it, and this is from the published decision by the Texas Medical Board, which was attached to our motion to dismiss and ask the district court to take notice of. Yes, they had, in fact, Dr. Brown had an expert, a toxicologist, who came forward and testified to attempt to explain the subsequent negatives, which Lab I and Quest weren't a party to this. The only person who was a witness was actually Lab I, not Quest Diagnostics, at the Texas Medical Board proceeding. He came from Utah for that. But, yes, all of that information and all of the expert testimony was before the Texas Medical Board for their consideration of what they wanted to do with Dr. Brown. We even think that, you know, assuming you even get over all of that, Texas has chosen in its judicial to not recognize a duty in this situation. We believe the specific case of Willis v. Roche Biomedical, which holds there is under a negligence theory no duty of care owed to a donor when workplace – when testing is done for a third party. I understand that may not be the law in the Ninth Circuit, but it is clearly and staunchly the law in Texas, and there is no Texas state court case overruling it. The ones that sort of go along with it are in accordance with that, though not squarely probably on a testing basis, to be fair. So we would urge there just on sort of all levels it should – this case should be dismissed. There is no allegation that at the time these statements were made, they were made with malice. We think an absolute privilege. I don't have any further unless one of you has questions for me. Any questions? I won't take up your time. Thank you. Does anyone have any questions of the appellant? No. Thank you. The case just argued is submitted for decision.
judges: Goodwin, Schroeder, Hawkins